IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KATHLEEN M. HOLTZ,

                Plaintiff,                OPINION AND ORDER

      v.                                       07-C-314-C

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

---

This is an appeal from an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Kathleen M. Holtz, who suffers from a back impairment and fibromyalgia, challenges the commissioner's determination that she is not disabled and therefore ineligible for Disability Insurance Benefits or Supplemental Security Income under Titles II and XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382c(3)(A). A vocational expert testifying at an administrative hearing offered the opinion that, based upon her experience, a significant number of jobs existed in the state economy that plaintiff could perform in spite of her limitations. In this appeal, plaintiff alleges that the vocational expert's testimony was not reliable and therefore does not constitute substantial evidence to support the administrative law judge's decision. Because I agree that the administrative law judge failed to develop the record to ensure that the vocational expert had an adequate foundation for her estimates of the number of jobs

plaintiff could perform, this case will be remanded to the commissioner for further proceedings.

From the administrative record, I find the following facts.

FACTS

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 16, 2004, alleging that she had been disabled since June 16, 2002. Plaintiff was 46 years old on the date that she alleged she became disabled. She had past work experience as a bartender, housekeeper and certified nursing assistant. She alleged that she was not able to work as a result of a lower back injury, fibromyalgia and hypertension.

After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a *de novo* hearing before an administrative law judge. Administrative Law Judge William G. Brown convened a hearing on August 14, 2006, at which plaintiff appeared with counsel. The administrative law judge heard testimony from plaintiff and Mary Harris, an impartial vocational expert. According to Harris's résumé, she had more than 20 years experience as a vocational specialist. Plaintiff agreed at the hearing that Harris was qualified to offer expert vocational testimony.

The administrative law judge asked Harris to assume a hypothetical person of plaintiff's age, education and work experience who was limited to sedentary work (lifting ten

2

pounds occasionally, five pounds frequently, standing or walking two hours of an eight-hour day and sitting six hours of an eight-hour day) with the ability to change position from sitting to standing every 45 minutes; no more than occasional ramp or stair climbing; no climbing ropes, ladders or scaffolds; rare bending or twisting; occasional stooping, crouching, kneeling or crawling; and no work around heights or hazardous machinery.  Harris testified that such an individual would not be able to perform plaintiff's past relevant work but would be able to perform the unskilled jobs of cashier, electronics worker and hand packager. Harris provided relevant citations from the *Dictionary of Occupational Titles* for each of these jobs and explained that the *Dictionary* described the jobs as requiring a light level of exertion. She explained, however, that she was aware from her placement experience that jobs existed in each category that could be performed at the sedentary level.  As two examples of sedentary cashier jobs, Harris cited the jobs of cashier at a parking lot or recreational facility. She estimated that approximately 5,000 of the total 65,000 cashier jobs, 5,000 of the 15,000 electronics worker jobs and 10,000 of the 20,000 hand packager jobs in the state of Wisconsin could be performed at the sedentary level and would fit the administrative law judge's hypothetical.

On cross-examination, plaintiff's lawyer asked Harris to explain how she had arrived at the 5,000 figure for the number of cashier jobs fitting the administrative law judge's hypothetical.  Harris testified that she had extrapolated that number from the 65,000 total cashier jobs in the state of Wisconsin based upon her placement experience and upon "seeing

jobs and various occupations where unskilled, sedentary cashiers exist." AR 489. Harris explained that her job as a vocational specialist involved contacting employers, visiting job sites and conducting job analyses. When asked for documentation, Harris indicated that she had some in the files of her previous clients and she would need their permission to release it. She acknowledged, however, that she lacked numerical data to prove the accuracy of her estimate concerning the number of cashier jobs that would fit the administrative law judge's hypothetical and described her estimate as an "educated guess." AR 490-491. She admitted the same was true of her estimates concerning the electronics worker and hand packager jobs.

On November 24, 2006, the administrative law judge issued a decision finding plaintiff not disabled. Applying the familiar five-step sequential evaluation process, 20 C.F.R. §§ 404.1520 and 416.920, the administrative law judge found that plaintiff had not engaged in substantial gainful activity after her alleged onset date (step one); she had the severe impairments of fibromyalgia and right SI joint dysfunction, with a transitional vertebra at L5 (step two); none of plaintiff's impairments either singly or in combination met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (step three); plaintiff was unable to perform her past relevant work (step four); and jobs existed in significant numbers in the economy that plaintiff could perform given her age, education and residual functional capacity (step five). In reaching his conclusions at step four and five, the administrative law judge adopted the same formulation of plaintiff's residual functional capacity as he had presented to Harris in the hypothetical that he posed

at the hearing. He acknowledged that Harris's testimony was inconsistent with the *Dictionary of Occupational Titles* insofar as the *Dictionary* listed the various jobs as requiring a light level of exertion, which would exceed plaintiff's residual functional capacity. He noted, however, that Harris had testified that "based on her personal professional experience, there were sedentary jobs available" in the occupations of cashier, electronics worker and hand packager. AR 24. The administrative law judge explained that Harris's estimates of the number of jobs available in each category "were based on the Wisconsin Department of Labor and Statistics, which she reduced to take into account the limitations of the hypothetical, also based on her professional experience." Id.

The decision of the administrative law judge became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review.

OPINION

To be entitled to disability insurance benefits or supplemental security income under the Social Security Act, a claimant must establish that she is under a disability. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The initial burden is on the claimant to prove that a severe impairment prevents her from performing past relevant work. If she

can show this, then the burden shifts to the commissioner to show that despite the severe impairment the claimant is able to perform other work "which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997); 42 U.S.C. § 423(d)(2)(A). This shifting of the burden to the commissioner is not statutory, "but is a long-standing judicial gloss on the Social Security Act." Walker v. Bowen, 834 F.2d 635, 640 n. 3 (7th Cir. 1987). The court must uphold the commissioner's finding regarding the existence of other work if the finding is supported by substantial evidence, that is, if reasonable minds would find the evidence adequate to support the conclusion. 42 U.S.C. § 405(g) (commissioner's findings of fact conclusive if supported by substantial evidence); Richardson v. Perales, 402 U.S. 389, 401 (1971).

Social Security Ruling 00-4p explains that the commissioner can rely on information contained in the *Dictionary of Occupational Titles* published by the Department of Labor to meet his burden of showing that a claimant unable to perform her past work can make a vocational adjustment to other work existing in significant numbers. The Social Security Administration has taken "administrative notice" of the *Dictionary*, which contains detailed physical requirements for a variety of jobs. 20 C.F.R. §§ 404.1566(d)(1) and 416.966(d)(1). Alternatively, the commissioner may rely on information provided by a vocational expert. SSR 00-4p. However, an administrative law judge who takes testimony from a vocational expert about the requirements of a particular job must determine whether that testimony is

6

consistent with the *Dictionary*.   Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006).

The ruling states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p.

The ruling explains that because the *Dictionary* "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," a vocational expert may be able to provide more specific information about jobs than that provided by the *Dictionary*.   Id.   "Information about a particular job's requirement or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [vocational expert's] experience in job placement or career counseling."   Id.   When there is a conflict between the vocational expert's testimony and the *Dictionary*, the administrative law judge is free to rely on the vocational expert's testimony so long as the administrative law judge determines that "the explanation given by the [vocational expert] is reasonable and provide[s] a basis for relying on [that] testimony rather than on the DOT information."   Id.

7

In this case, the vocational expert acknowledged that her testimony regarding plaintiff's ability to perform the occupations of cashier, electronics worker and hand packager was inconsistent with the *Dictionary*, which listed each of those occupations as light, not sedentary. She indicated, however, that she was aware from her experience in placing individuals in jobs and contacting various employers that sedentary jobs in each occupation existed in the state of Wisconsin.

Plaintiff raises two objections to the administrative law judge's decision to accept this testimony. First, she contends that under SSR 00-4p, the administrative law judge was precluded from finding that jobs listed in the *Dictionary* calling for a light level of exertion could actually be performed at the sedentary level. As support for her argument, plaintiff relies on language that explains that an administrative law judge may not rely on testimony from a vocational expert if the expert uses a definition of a particular level of work (e.g., sedentary, light, medium) different from those set forth in the regulations. "For example, if all available evidence (including VE testimony) establishes that the exertional demands of an occupation meet the regulatory definition of 'medium' work . . . the adjudicator may not rely on VE testimony that the occupation is 'light' work." SSR 00-4p. The ruling makes clear, however, that although the regulatory definitions of exertional levels are controlling, "there may be a reason for classifying the exertional demands of an occupation (as generally performed) differently than the DOT (e.g. based on other reliable occupational information)." Id. In this case, the vocational expert's testimony falls under this latter,

8

permissible scenario. Harris did not testify that a hypothetical person with the proposed limitations could perform light work; rather, she testified that a subset of the jobs classified in the *Dictionary* as "light" could actually be performed at the sedentary level. Nothing in SSR 00-4p precluded the administrative law judge from relying on that testimony.

Second, plaintiff contends that the administrative law judge did not make adequate findings regarding why he was accepting the vocational expert's testimony over the information provided by the *Dictionary*. I disagree. It is plain from the administrative law judge's decision that he found the vocational expert's explanation that her opinion was based on her experience to be a reasonable one. To the extent that plaintiff is arguing that the expert's experience was not a good reason for accepting her testimony over the *Dictionary*, I disagree. Plaintiff did not deny that with 20 years experience in the field, Harris was qualified to offer expert vocational testimony. Harris explained that she was aware from working with clients and contacting employers that sedentary cashier, electronics worker and hand packager jobs existed, and she provided two examples of such jobs. This testimony, combined with Harris's qualifications and experience, provided a reasonable basis for the administrative law judge to rely on it over the *Dictionary* with regard to the requirements of the various jobs Harris identified.

Although plaintiff's attack on this aspect of Harris's testimony fails, she succeeds in attacking Harris's testimony regarding the number of jobs available statewide that an individual with plaintiff's limitations could perform. As an initial matter, I disregard

plaintiff's contention that Harris's testimony was required to pass the test for the admissibility of expert testimony set forth in Fed. R. Evid. 702, which substantially codifies the holdings of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). As plaintiff admits, the Federal Rules of Evidence do not apply to disability adjudications, Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002), so her Daubert argument is misplaced. Nonetheless, because administrative decisions must be supported by substantial evidence, experts testifying at administrative hearings should use reliable methods in forming their opinions. Id. "Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." Id. "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004) (quoting Donahue, 279 F.3d at 446). If the basis of the vocational expert's conclusions is questioned at the hearing, then the administrative law judge should undertake an inquiry into the reliability of the purported expert's conclusions. Id.

At the hearing, plaintiff questioned Harris about the genesis of her job estimates. Harris explained that in estimating the number of sedentary, unskilled jobs available statewide in the categories of cashier, electronics worker and hand packager, she began with estimates provided by the Wisconsin Department of Labor, which provided numbers of jobs corresponding to the various occupations listed in the *Dictionary*. She explained that she

reduced those numbers to reflect the number of jobs in each occupational category that could be performed at the sedentary level.  What Harris failed to explain, however, was the method she employed in making this reduction.  All she cited was her experience, but that experience does not explain her math.  She did not cite any formal market surveys that she or other vocational experts had done or even describe any informal method she employed to extrapolate her estimates from the state job data.  As in McKinnie, 368 F.3d at 911, Harris did not substantiate her estimates with a written report or other documentation and her "vague responses to [plaintiff's] questioning were insufficient to establish a foundation for her testimony."

   Harris did say that she had documentation to support her numbers but that it was in the files of her previous clients and could not be released without their consent.  Citing McKinnie, defendant argues that plaintiff's challenge to Harris's testimony fails because she did not ask Harris to obtain this consent and provide the documentation.  In McKinnie, the plaintiff requested the vocational expert to supplement the record with documentation of her research, but both the vocational expert and the administrative law judge insisted that plaintiff pay for the preparation of the materials.  Remanding the case for further proceedings, the court explained that "[t]he data and reasoning underlying a vocational expert's opinions are not 'available on demand' if the claimant must pay for them."  Id. at 911.  However, the court did not remand the case on the narrow ground that the plaintiff requested and was denied information that she claimed was necessary for proper

11

adjudication of her case, as defendant suggests. Rather, the court remanded the case because "the [administrative law judge] did not inquire into the reliability of [the vocational expert's] conclusions as he was required to do." Id.

This case must be remanded for the same reason. Plaintiff's questioning of the vocational expert called into dispute the reliability of her opinion that 5,000 cashier jobs, 5,000 electronics worker jobs and 10,000 hand packager jobs existed in Wisconsin that could be performed at the sedentary level. Absent supplementation or clarification, the vocational expert's testimony does not provide substantial evidence to support the administrative law judge's conclusion at step five of the sequential evaluation process. Because the commissioner bears the burden at this step, the administrative law judge was obligated to obtain the supplementation needed to ensure that the expert's testimony was reliable. His failure to do so requires remand of the case.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Kathleen Holtz's applications for Disability Insurance Benefits and Supplemental Security Income is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 8th day of November, 2007.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge